**Morton HALPERIN, Plaintiff,**

v.

**CENTRAL INTELLIGENCE AGENCY et al., Defendants.**

**Civ. A. No. 76–1082.**

United States District Court, District of Columbia.

March 7, 1978.

Mark H. Lynch, Washington, D. C., for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., William G. Schaffer, Deputy Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Lynne K. Zusman, Jeffrey Axelrad, Paul F. Figley, Washington, D. C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This Freedom of Information Act (FOIA) case is now before the Court on defendants' motion for summary judgment, plaintiff's July 1, 1977, motion to compel, and plaintiff's October 14, 1977, motion to compel. For the reasons hereinafter stated, the Court will deny plaintiff's motions to compel and grant defendants' motion for summary judgment.

## I. BACKGROUND

On January 19, 1976, plaintiff filed a request under the FOIA with the defendant Central Intelligence Agency (CIA). This request sought the release of documents in defendants' possession that pertained to briefings given by the CIA in 1970 to members of the press concerning the then-extant political situation in Chile. On April 6, 1976, the CIA replied that it had located two documents responsive to plaintiff's request, but that it was withholding these documents pursuant to exemptions 3 and 6 of the FOIA. 5 U.S.C. §§ 552(b)(3) & (6). Plaintiff then appealed administratively. In reply to this appeal, the CIA notified plaintiff that it had found five additional documents responsive to his request; the Agency, however, determined not to release these documents, as well as the initial two, pursuant to exemptions 1, 3, and 6. 5 U.S.C. §§ 552(b)(1), (3) & (6).

During the course of this litigation, defendants decided to release all but the exemption 6 portions of two of the withheld

documents (Nos. 1 & 2), and plaintiff decided not to contest the withholding of three documents (Nos. 3, 4 & 5), and not to challenge the exemption 6 deletions from documents 1, 2, 6 & 7. In addition, during the pendency of the instant motions, defendants decided to release an additional three sentences from document 6 with but a single deletion.[1] Accordingly, the only withheld document-portions that remain in dispute are two paragraphs (17 lines) from document 6 and the entirety of document 7 (35 lines). Both of these documents are background briefing materials, and defendants have invoked both exemption 1 and exemption 3 as the basis for withholding these document portions.

## II. THE BASIS FOR WITHHOLDING

In conformance with the requirements of *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), and *Phillippi v. CIA,* 178 U.S.App.D.C. 243, 546 F.2d 1009 (1976), defendants filed a series of detailed affidavits that set forth the basis for the CIA's invocation of exemptions 1 and 3 for documents 6 and 7. As these affidavits indicate, documents 6 and 7

> were prepared in 1970 in response to a request for a limited press briefing on the political situation in Chile. The documents were prepared with the explicit understanding and agreement that the information contained therein, while fully accurate, would not be attributed to the U.S. Government or the CIA.

Supplemental Affidavit of Charles A. Briggs, ¶ 10 (hereinafter, Briggs Supp.Aff.). Documents 6 and 7 were both only made available to a single media representative, who had been granted clearance by the CIA to receive classified information. Answers to Plaintiff's Second Set of Interrogatories, Nos. 3(a)–(c).

Defendants' most comprehensive affidavit asserts that the first paragraph (11 lines) deleted from document 6 consists of foreign intelligence information concerning specific secret political arrangements between foreign government officials and the identities of individuals who played significant roles in these secret activities. Briggs Supp.Aff. at ¶ 4. This affidavit further asserts that the second paragraph (6 lines) deleted from document 6 contains "personal details concerning a foreign personality." *Id.* at ¶ 5. Finally, this affidavit asserts that the entirety of document 7 (35 lines) "concerns secret communications between foreign government officials." *Id.* at ¶ 6. The affidavit contends that, with respect to all three deleted document portions, access to the particular information in 1970 would have been "severely restricted," and disclosure that the CIA possessed such information in 1970 "could lead to the identification of the ultimate intelligence sources utilized in acquiring this information." *Id.* at ¶¶ 5–7.

> Defendants originally asserted that
>
> [t]wo of the human intelligence sources involved in acquiring the information described above are currently residing abroad and may be expected to continue to provide information of value to this Government's foreign intelligence mission provided their identities are protected. Attribution to the CIA of information which could lead to their identification, such as the withheld textual material in Document Nos. 6 and 7, could lead to an intensive counter-intelligence effort to identify these sources, putting an end to their usefulness, adversely impacting the ability of this Government to conduct intelligence operations overseas in the future and very possibly placing their lives in jeopardy.

Briggs Supp.Aff. at ¶ 7. However, during the course of considering the instant motions, the Court scrutinized the withheld documents, which had been filed *in camera* pursuant to the Court's Order of October 17, 1977. On the basis of this examination, the Court concluded that *more* than two

---

1. The release of these additional lines resulted from the Court's suggestion, in its Order of December 23, 1977, that defendants reexamine their decision to withhold these lines. *See* page 667, *infra.*

"human intelligence sources" may well have been responsible for providing defendants with the withheld information. Accordingly, the Court ordered defendants to explain fully the number of sources involved and which information each had supplied. Order of December 23, 1977. Recognizing that such an explanation "may itself contain identifying information with respect to the undisclosed intelligence sources," the Court indicated that it would be permissible for defendants to file an appropriate explanatory affidavit under seal for *in camera* inspection.

On January 16, 1978, in compliance with the Court's Order, defendants filed two supplemental affidavits—one in the public record and one *in camera*. Both of these were prepared by Robert E. Owen, Information Review Officer for the Directorate of Operations of the CIA. The public affidavit asserts that the information in the withheld portions of documents 6 and 7 was provided by five intelligence sources: Four of the intelligence sources were identified in the affidavit as human sources, and the remaining source was identified as a nonhuman source in defendants' answer to question 2(a) of plaintiff's third set of interrogatories. The public affidavit indicates that human source # 1 is currently alive and residing in Latin America; it further indicates that although he is not now an active intelligence source, he can be contacted for such purposes in the future. Human source # 2 is identified as a national of a Latin American country who is presently in exile in another country; he, too, is not now an active intelligence source but can also be recontacted for that purpose. Human source # 3 is identified as a citizen of a Latin American country and is believed to be residing there at this time; he is also not an active source but can be recontacted. Finally, human source # 4 is identified as a prominent citizen of a Latin American

country who presently resides in that country. The activities of all these human sources as CIA sources has *never* been compromised. *See* Defendants' Answer to Plaintiff's Third Set of Interrogatories, Nos. 1(a), 3(a), and 4(a). The one nonhuman source has not been further described in the public affidavit in order to avoid "risk of compromise." This source has also *never* been compromised. *See id.*, No. 2(b).

## III. MERITS

Defendants have moved for summary judgment on the basis of both exemption 1 and exemption 3, 5 U.S.C. §§ 552(b)(1) & (3). Plaintiff has opposed defendants' motion with respect to both asserted exemptions on the ground that material facts remain in dispute. In an attempt to resolve these allegedly disputed facts, plaintiff has sought to compel defendants to identify *both* the CIA official who in 1970 gave the documents here in issue to a media representative *and* the media representative who received the documents. Plaintiff argues that since no present CIA employee has first-hand knowledge of the 1970 transaction, it is necessary for plaintiff to depose said individuals in order to determine whether an express agreement of confidentiality did indeed exist in 1970 between the CIA and the media representative and, if so, what the express terms of such an agreement were. The Court concludes that: (1) the discovery sought by plaintiff is not material to the propriety of defendants' invocation of exemption 3; (2) no material facts relevant to the applicability of exemption 3 remain in dispute; and (3) defendants are entitled as a matter of law to judgment based on their invocation of exemption 3.[2]

Exemption 3 to the FOIA, as recently amended by the Government in the Sun-

2. Accordingly, the Court need not consider the propriety of defendants' exemption 1 claim, and the Court thus has no occasion to consider whether, in view of the District of Columbia Circuit's recent decision in *Halperin v. Department of State*, 565 F.2d 699 (1977), the discovery sought by plaintiff is material to a determination of the propriety of defendants' invocation of exemption 1. Moreover, this Court finds nothing in Judge McGowan's compelling opinion in *Halperin v. Department of State* that suggests that the type of information sought by plaintiff herein is relevant to defendants *exemption 3* claim.

shine Act, P.L. No. 94–409, 90 Stat. 1241, § 5(b) (1976), permits federal agencies to withhold *from* disclosure documents that are

specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

Defendants contend that the withheld portions of documents 6 and 7 are exempted from disclosure by this exemption and 50 U.S.C. § 403(d)(3), which requires the Director of the CIA to protect "intelligence sources and methods from unauthorized disclosure." [3]

It is now well-settled, and plaintiff does not argue to the contrary, that 50 U.S.C. § 403(d)(3) is a statute that satisfies the two express requirements of exemption 3. As the Court of Appeals for this Circuit stated in *Phillippi v. CIA*, 178 U.S.App.D.C. 243, 249, 546 F.2d 1009, 1015 n.14 (1976):

If the [CIA] can demonstrate . . . that release of the requested information can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods, it is entitled to invoke the statutory protection accorded by 50 U.S.C. § 403(d)(3) and 5 U.S.C. § 552(b)(3).

*Accord, Weissman v. CIA*, 565 F.2d 692, 694 (D.C.Cir.1977); *Fonda v. CIA*, 434 F.Supp. 498, 503–04 (D.D.C.1977); *Marks v. CIA*, 426 F.Supp. 708, 710–11 (D.D.C.1976). *See* H.R.Rep.No.94–880, pt. 2, 94th Cong., 2d Sess. 15 n.2 (1976), U.S.Code Cong. & Admin. News 1976, p. 2183. Thus, the only determination for this Court to make in the circumstances of this case is whether the release of the withheld document portions "can *reasonably* be expected to lead to unauthorized disclosure of intelligence sources [or] methods." *Phillippi v. CIA, supra* (emphasis added).

A. *The Discovery Plaintiff Seeks is not Material to the Issue Before the Court.*

 It is plaintiff's contention that summary judgment is inappropriate at this time because the discovery he now seeks is "plainly relevant to defendants' rationale for withholding, which rests on the existence of [an express] agreement." Plaintiff's Memorandum of October 14, 1977, at 6. In short, plaintiff argues that unless there existed an express nondisclosure agreement in 1970, the CIA's release of the disputed documents at that time to the one media representative subjected the Agency to such a substantial risk that this Court should, as a matter of "common sense," reject defendants' present claims of harm as "overblown." *Id.*

The Court finds plaintiff's rationale untenable, for neither the existence nor the express terms of the alleged 1970 agreement are *material* to defendants' present invocation of exemption 3. First, even assuming that defendants had no *express* nondisclosure agreement in 1970 with the media representative, the undisputed facts herein demonstrate that defendants had substantial grounds to believe that the media representative would not disclose that he obtained the withheld information from the CIA: He had three times been cleared to receive classified information. Certainly it is not for this Court to substitute its assessment of the risk of disclosure under such circumstances for that of the Agency. *Cf. Bell v. United States*, 563 F.2d 484, 487 (1st Cir. 1977). Thus, whether or not an

---

**3.** Defendants have asserted that 50 U.S.C. § 403g is another statute that exempts the withheld document portions from disclosure pursuant to exemption 3. Section 403g, which exempts the CIA from "the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency," appears to be at least partially coextensive with section 403(d)(3), and, indeed, section 403g itself states that one of its purposes is "further to implement" the nondisclosure provision of section 403(d)(3). Of course, since the Court finds that section 403(d)(3), in conjunction with exemption 3, exempts the withheld document portions from disclosure, the Court need not, for the purposes of this case, determine the precise degree of overlap of these two statutory provisions.

express agreement governed the CIA's limited 1970 release of the disputed documents, the Court must conclude that the Agency took adequate precautions in 1970 to ensure that such release would not lead to the disclosure of intelligence sources or methods. Second, and more importantly, this Court's limited role in a case such as this, as noted above, is to determine whether the *present* disclosure of the withheld information "can reasonably be expected to lead to unauthorized disclosure of intelligence sources [or] methods." *Phillippi v. CIA, supra.* In this connection, it is essential to emphasize that *none* of the sources responsible for the withheld information has *ever* been compromised. Thus, it is irrelevant to defendants' present invocation of exemption 3 whether the limited 1970 release was reasonable. Even if the 1970 release had been unreasonable, defendants could, in view of the fact that the sources have never been compromised, still invoke exemption 3 as a basis for their present withholding of the disputed document portions so long as the aforequoted 50 U.S.C. § 403(d)(3) standard were *presently* satisfied. Accordingly, the Court will deny plaintiff's motions to compel[4] and will turn to the merits of defendants' invocation of exemption 3.

B. *The Withheld Document Portions Fall Within the Scope of 50 U.S.C. § 403(d)(3), and Are Thus Permissibly Withheld From Disclosure Pursuant to Exemption 3.*

■ While the FOIA expressly permits the district courts to conduct *in camera* examinations of withheld documents in order to determine the propriety of any withholding, 5 U.S.C. § 552(a)(4)(B), it is well established in this Circuit that, as a general rule, "it is only where the record is vague and the agency claims to sweeping or suggestive of bad faith that a District Court should conduct an *in camera* examination to look for segregable non-exempt matter." *Weissman v. CIA,* 565 F.2d 692, 698 (D.C. Cir.1977). The CIA conscientiously processed plaintiff's request in this case: It continued to search for (and locate) additional documents during plaintiff's administrative appeal, and it voluntarily released all but a few lines of the requested documents. Thus, nothing in the Agency's handling of this case has even remotely suggested bad faith. In addition, the Agency's affidavits were specific and detailed, and they demonstrated that "the contested document[s] logically [fall] into the category of the exemption indicated," here exemption 3. *Weissman v. CIA,* 565 F.2d at 697. Thus, this Court could have, without examining the documents, sustained defendants' claim that the withheld document portions here in dispute were within the scope of 50 U.S.C. § 403(d)(3), and thus exempt from disclosure pursuant to exemption 3. *Id.; Bell v. United States, supra.* Nevertheless, out of an abundance of caution, and because only two short documents were withheld by the defendants, the Court exercised its discretion to examine the disputed documents *in camera* in order to test defendants' good faith.

The Court's initial examination of the disputed documents did raise two issues: (1) whether the first few withheld lines from document 6 might appropriately be considered a "reasonably segregable portion," 5 U.S.C. § 552(b), which might not be exempt under the same rationale asserted for the other withheld document portions; and (2) whether more than the two sources sug-

4. In addition to the depositions plaintiff's motions seek to compel, plaintiff's second motion to compel (October 14, 1977) seeks to compel defendants to answer certain interrogatories relating to (1) whether the type of limited media disclosure involved herein was "unique," and (2) whether the media recipient of the documents here in issue had any official duties within the meaning of section 6(A) of Executive Order 11652. In denying plaintiff's motions to compel, the Court specifically includes these interrogatories within the scope of its denial: The interrogatories concerning the "uniqueness" of the 1970 release are irrelevant for the same reasons as the existence *vel non* of an express nondisclosure agreement; and the interrogatories involving the official duties *vel non* of the media representative, if relevant to anything, are relevant only to the exemption 1 issues that the Court need not consider. *See* note 2, *supra.*

gested by defendants' initial affidavits might have been responsible for the information contained in the various withheld document portions. Accordingly, the Court ordered the defendants to file supplemental affidavits in order "to create as complete a public record as possible." *Phillippi v. CIA*, 178 U.S.App.D.C. at 247, 546 F.2d at 1013. Defendants responded to the Court's order by releasing all but one word of the first three previously withheld sentences from document 6 and by filing supplemental affidavits which confirmed that four human (and one nonhuman) sources were responsible for the withheld information. The Court does *not* find that the supplementary information provided by defendants suggests that the CIA was not previously acting in good faith. While the Agency should probably not have withheld the three sentences that have now been disclosed, the Court cannot say that there was no reasonable basis for the Agency to have found these sentences to be "nonsegregable." And, while defendants' initial affidavits suggested that *only* two sources were involved, those affidavits did not exclude the possibility that more than two sources were involved. While the Court believes that the CIA should be more complete in its future FOIA affidavits, the Court infers no bad faith whatsoever from the Agency's mere omission of the fact that other sources were also responsible for the withheld information.

The Court thus concludes that the CIA has acted in good faith and that its invocation of 50 U.S.C. § 403(d)(3) and exemption 3 must, on the basis of the entire record herein, be sustained. The Court's careful *in camera* scrutiny of the withheld document portions at least arguably supports defendants' claim that the withheld information is of such a sensitive nature that access thereto in 1970 was "severely limited" and "that attribution to the CIA could lead to the identification of the ultimate intelligence sources utilized in acquiring the information." Briggs Supp.Aff. at ¶ 7. As this Court's actions throughout this litigation, and particularly its Order of December 23, 1977, demonstrate, this Court has not per-

mitted itself to be blinded by nonspecific claims of national security and foreign intelligence sources. Nevertheless, this Court has neither "the skill [nor the] experience to weigh the repercussions of disclosure of intelligence information." *Weissman v. CIA*, 565 F.2d at 697. Accordingly, since the information contained in the withheld document portions is accurately described by the defendants' affidavits, and since defendants have acted in good faith throughout this litigation, the Court must sustain the withholding of the disputed document portions pursuant to 50 U.S.C. § 403(d)(3) and exemption 3.

An Order in accordance with the foregoing will be issued of even date herewith.